UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANK NALI,

                    Plaintiff,                      Case Number 04-10235-BC
                                                        Honorable David M. Lawson
v.                                           Magistrate Judge Charles E. Binder

CITY OF GROSSE POINTE WOODS,
ANTHONY CHALUT, CITY OF GROSSE
POINTE FARMS, DAVID GARDZELLA,
ANDREW PAZUCHOWSKI, RICHARD
ROSATI, and JOHN DOES,

                    Defendants.
_____/

## OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS, DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT, AND DENYING OTHER MOTIONS AS MOOT

This matter is before the Court for a review of the plaintiff's objections to a report filed by Magistrate Judge Charles E. Binder recommending that motions to dismiss and for summary judgment filed by all the defendants be granted and the case dismissed.  The magistrate judge also recommended that the plaintiff's motion to amend his complaint be denied.  The Court agrees that the case should be dismissed, but for reasons different than articulated by the magistrate judge.  The Court, therefore, will overrule the plaintiff's objections, adopt the report in part, adopt the recommendation, grant the defendants' motions, dismiss the federal claims with prejudice, and decline supplemental jurisdiction over the state claims.  The Court also will deny other pending motions, as described below.

<center>I.</center>

The plaintiff filed this case alleging that his civil rights were violated by the defendants when they procured and executed a warrant to search his residence. The case was referred to Magistrate Judge Binder on an order for general pretrial management under 28 U.S.C. § 636(b).

The plaintiff, Frank Nali, was convicted of extortion in Michigan state court on February 26, 2003. The plaintiff contends that a search of his home completed prior to his arrest and trial violated his rights. The plaintiff filed an amended eleven-count complaint on June 1, 2005 naming as defendants the officers who conducted the search, the municipalities employing them, and the magistrate judge who authorized the search. The complaint alleges violations of two federal statutes, 42 U.S.C. §§ 1983 and 1985, along with a variety of state law claims.

According to the pleadings and submissions of the parties, on September 19, 2002, City of Grosse Pointe Woods police detective received a complaint from Mary O'Brien, who claimed that she had a sexual relationship with the plaintiff for several years. O'Brien said that after she ended the relationship, her ex-husband and some relatives received anonymous packages containing videotapes showing Ms. O'Brien and the plaintiff having sex at the plaintiff's home and a letter accusing Ms. O'Brien of making such videos for money. Ms. O'Brien told Detective Chalut that the plaintiff had threatened to distribute the videotape to others.

In addition, Ms. O'Brien's sister-in-law said that shortly she received one of the packages, she saw someone fitting the plaintiff's description near her home. She then found the package in her mailbox. Based on this evidence, Ms. O'Brien and Detective Chalut believed the plaintiff sent the videos, which Ms. O'Brien denied authorizing the plaintiff to make or distribute.

<center>-2-</center>

Detective Chalut applied for a warrant to search the plaintiff's home in Grosse Pointe Farms. The application requested a warrant to search for and seize any videotapes and computer hardware or software that may have contained images of the plaintiff engaged in sexual activity with Ms. O'Brien, any sexual devices captured on the video, and linens or bed coverings depicted in the videos. In support of the warrant, Chalut furnished the following affidavit:

> The witness, Mary O'Brien, states that her ex-husband and several other family members have received an anonymous package containing a letter and a video tape. The witness has viewed the tape and confirms that the female in the video is her, the location the video was recorded at is NALI'S home (484 Allard), that the male participant is NALI, and that the video was recorded without her consent.
>
> The witness and NALI had a sexual relationship for several years. The witness has recently ended the relationship with NALI who she now states has threatened to distribute the video to her family members, including her parents. The witnesses [sic] sister-in-law who lives in Birmingham, MI observed a W/M fitting NALI's physical description walking away from her home, she then checked the mailbox and observed a yellow envelope containing a video tape and letter. The letter briefly stated that the witness was consciously making video's [sic] of this nature for money and the family should be notified about such behavior. Witness states video taped approx. 7 years ago (determined by hairstyle).

Def. City of Grosse Pointe Farms Resp. to Order to File Search Warrant, Ex. A. The affidavit is signed by Chalut and verified by Lynne A. Pierce, a state municipal judge.

Municipal Judge Pierce issued the warrant. The warrant was executed the same day by Detective Chalut and the other police officer defendants.

The copy of the search warrant submitted by the parties is not signed by Judge Pierce. It appears that the document submitted comes from the copy of the state court's form set that includes the search warrant return and tabulation. Judge Pierce has submitted an affidavit swearing she signed the search warrant and Detective Chalut submitted an affidavit swearing that Judge Pierce signed the search warrant in his presence. There is no contrary evidence that the warrant was not

signed.  In addition, at a state court hearing challenging the search in Nali's criminal proceeding, Wayne County, Michigan circuit judge Judge Kym L. Worthy stated on the record, "[t]he magistrate was wrong in signing the search warrant."  Def. City of Grosse Pointe Farms Resp. to Order to File Search Warrant, Ex. 1, Tr. at 2.

The search warrant was executed the same day it was issued, September 19, 2002.  Detective Chalut works for the City of Grosse Pointe Woods, but the plaintiff lives in the City of Grosse Pointe Farms.  It appears that Detective Chalut procured the assistance of officers from Grosse Pointe Farms, the other defendants in this case, to help him conduct the search.

The return of the search warrant indicates that videotapes, photos, papers, sexual devices, a computer, a comforter, and a camcorder with tripod were seized.  The plaintiff claims that Ms. O'Brien voluntarily made the videos to show "her adeptness in her activities."  Pl.'s Resp. to Def. Grosse Pointe Woods Mot. Summ. J. at 2.  He claims that she asked him for a copy of the video so she could start a career in pornography and implies that Ms. O'Brien is or was a prostitute.  The plaintiff does not suggest that the defendants had or could have had knowledge of these things, and therefore none of these allegations or arguments has any bearing on the legal issues now before the Court.  The plaintiff claims that the police refused to show him the search warrant when the conducted the search.

On October 2, 2002, Judge Pierce signed a five-count felony complaint and warrant charging Mr. Nali with extortion, stalking, and three counts of obscenity, all in violation of Michigan law. On January 3, 2003, Wayne County, Michigan Circuit Judge Kym Worthy granted a motion made by Mr. Nali to quash the search warrant.  A transcript from the trial court indicates the trial judge found that the search warrant "was, on its face, defective" primarily because it failed to "allege[] at

all any criminal behavior." Def. City of Grosse Pointe Farms Resp. to Order to File Search Warrant, Ex. 1, Tr. at 4-5.  The judge concluded that the affidavit submitted by Detective Chalut does not allege any criminal activity that corresponded to the charges in the criminal complaint.  The case ultimately proceeded to trial, and on February 26, 2003, the plaintiff was found guilty of extortion. Mr. Nali was sentenced to a minimum of 13 years and a maximum of 20 years in prison.

On September 23, 2004, the plaintiff filed a civil complaint in this Court.  The complaint contains a number of allegations against police officers Anthony Chalut, David Gardzella, Andrew Pazuchowski, Richard Rosati, and John Does; their employers, the cities of Grosse Pointe Woods and Grosse Pointe Farms; and Municipal Judge Lynne Pierce.  All the claims arise from the search warrant issued by Judge Pierce and executed by the police officer defendants.

On April 19, 2005, the Court dismissed the claims against Judge Pierce on the ground of judicial immunity, adopting a recommendation by Magistrate Judge Binder.  Magistrate Judge Binder then granted the plaintiff's motion to amend his complaint.  On June 1, 2005, the plaintiff filed an amended complaint.  He again named Judge Pierce as a defendant.  The amended complaint contains the following claims: violation of civil rights under 42 U.S.C. §1983 (count I); conspiracy to violate civil rights under 42 U.S.C. § 1985 (count II); negligence (count III); violation of Michigan Compiled Laws section 780.657 (count IV); invasion of privacy (count V); wrongful imprisonment (count VI); intentional misconduct (count VII); trespass (count VIII); intentional infliction of emotional distress (count IX); negligence in supervision and training (count X); and respondeat superior (count XI).  On July 5, 2005, defendants Rosati and the City of Gross Pointe Farms filed a motion to dismiss.  On July 27, 2005, defendants Gardzella, Pazuchowski, Chalut, and

the city of Gross Pointe Woods filed a motion for summary judgment.  On August 15, 2005, the plaintiff filed a motion to amend his complaint.

On December 22, 2005, Magistrate Judge Binder filed a report recommending that the defendants' various motions be granted.  The magistrate judge concluded that: (1) Detective Chalut is entitled to qualified immunity because his belief that the affidavit supported a finding of probable cause was not objectively unreasonable; (2) the other officers were entitled to qualified immunity because they were relying on the validity of the search warrant obtained by Detective Chalut; (3) the plaintiff failed to allege sufficiently specific facts to support his conspiracy claim; (4) the municipal defendants are not liable because the plaintiff could not show a policy or practice leading to the alleged constitutional violations; (5) the Court ought not exercise supplemental jurisdiction over the state law claims because the federal claims should be dismissed; and (6) the plaintiff's proposed amendments to his complaint are futile.

The plaintiff filed timely objections to the recommendation that the individual defendants are entitled to qualified immunity and the municipal defendants should be dismissed.  The plaintiff did not object to the recommendation that the motion to further amend the complaint should be denied.

## II.

Upon proper objections, the Court will review *de novo* the findings and conclusions of a magistrate judge on dispositive motions.  *See* 28 U.S.C. § 636(b)(1)(B).  *See also United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).  However, the plaintiff failed to object to the magistrate judge's recommendation that the motion to amend the complaint be denied as futile.  General objections to a magistrate judge's report and recommendation do not preserve all issues for review.

-6-

"[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Since the plaintiff did not challenge the recommended denial of his motion to amend, the argument is waived. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) (holding that the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). The Court will adopt the recommendation that the motion to amend the complaint be denied.

## III.

### A.

The individual defendants all moved for summary judgment on the basis of qualified immunity. Qualified immunity is an affirmative defense that protects government actors performing discretionary functions from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Supreme Court has held that a claim of qualified immunity must be examined in two stages, *see Saucier v. Katz*, 533 U.S. 194, 200 (2001): "[f]irst, a court must consider whether the facts, viewed in the light most favorable to the plaintiff, 'show the officer's conduct violated a constitutional right,'" and "the court must then decide 'whether the right was clearly established.'" *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Saucier*, 533 U.S. at 201-02). The Sixth Circuit expanded that inquiry into a three-step sequential analysis, stating:

-7-

"The first inquiry is whether the plaintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights.'" *Tucker v. City of Richmond*, *Ky.*, 388 F.3d 216, 219 (6th Cir. 2004) (quoting *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).  However, the Sixth Circuit more recently has reiterated the requirement announced in *Saucier v. Katz* that this defense must be analyzed in two stages.  *See Lyon v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005).  It appears that the Supreme Court applies a two-step process:  "When confronted with a claim of qualified immunity, a court must ask first the following question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam) (internal quotes and citation omitted).  The second step requires a determination if the constitutional violation transgressed a right that was clearly established at the time, but "[i]t is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.* at 198 (internal quotes and citation omitted).

The Supreme Court has stated that lower courts must follow the analytical steps in the prescribed order and first determine whether a constitutional right was violated before assessing the reasonableness of the officers' conduct and whether the right was clearly established.  Although the "rigidity of this requirement" has been the subject of some criticism, *see Lyons*, 417 F.3d at 580

-8-

(Sutton, J. concurring), the Sixth Circuit insists that the analysis proceed in the prescribed order. *See Smith v. Cupp*, 430 F.3d 766, 773 n.3 (6th Cir. 2005). The magistrate judge in this case did not discuss the question of whether Nali's constitutional rights were violated by the search, but rather proceeded to decide the question of the reasonableness of the officers' reliance on the search warrant. Although it is understandable to want to skip to that question, since in this circuit "an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant," *Hale v. Art*, 396 F.3d 721, 725 (6th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 343-45 (1986)), the Court must first turn to the primary question.

It is beyond debate that the Fourth Amendment protects individuals from unreasonable searches of their homes, and that a search without a valid warrant is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573 (1980). The state court judge determined that the search warrant was invalid because the affidavit was not sufficient. But that does not necessarily resolve the question whether the plaintiff's constitutional rights were violated. The state court's determination that the search was unconstitutional must be examined in light of Michigan's issue preclusion laws to determine if it is binding on this Court; if not, the Court must independently determine if the search warrant affidavit is invalid. *See Knotted v. Sullivan*, 418 F.3d 561, 567-68 (6th Cir. 2005).

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that federal courts to give state court judgments the same preclusive effect as under state law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Michigan law, "[a] court must apply issue preclusion when 1) the parties in both proceedings are the same or in privity, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated in the first proceeding, 4) that issue was necessary to the judgment, and 5) the party against whom preclusion is asserted (or

its privy) had a full and fair opportunity to litigate the issue." *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004) (citing *Michigan v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630-31 (1990). In this case, the plaintiff would seek to assert the state court judgment that the search warrant was invalid against the individual officers and the municipal defendants, none of whom were parties in the state criminal proceedings. Since these defendants were not parties and did not have an opportunity to litigate the question in state court, they cannot be estopped from pressing the issue here, nor are they bound by the state court's ruling. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 546 n.4 (6th Cir. 2003) (noting in a similar civil rights case that the plaintiff "cannot collaterally estop the officers from relitigating this issue because the officers – 'the party against whom estoppel is sought' – did not have 'a full and fair opportunity to litigate the issue' during the suppression hearing") (quoting *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987).

With respect to the adequacy of the search warrant affidavit, "[a]ll that the magistrate must find in order to issue a warrant is probable cause that evidence of a crime would be found at the site to be searched." *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998); *see also United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (probable cause exists when there is a fair probability, given the totality of the circumstances that contraband or evidence of a crime will be found in a particular place). The state court judge concluded that the search warrant failed to show that any crime had been committed. However, the affidavit plainly sets out the allegations of Mary O'Brien that Frank Nali videotaped her sexual activity with him without her consent. The affidavit establishes that the videotaping occurred in Nali's house (the place to be searched) in the City of Grosse Pointe Farms, and it involved Nali and O'Brien.

-10-

The affidavit establishes probable cause that Nali violated Michigan's eavesdropping statute, which states:

> (1) Except as otherwise provided in this section, a person shall not do either of the following:
> (a) Install, place, or use in any private place, without the consent of the person or persons entitled to privacy in that place, any device for observing, recording, transmitting, photographing, or eavesdropping upon the sounds or events in that place.
> (b) Distribute, disseminate, or transmit for access by any other person a recording, photograph, or visual image the person knows or has reason to know was obtained in violation of this section.

Mich. Comp. Laws § 750.539d.  Surreptitiously videotaping sexual activity without the consent of all the participants constitutes a violation of that statute.  *Lewis v. LeGrow*, 258 Mich. App. 175, 186, 670 N.W.2d 675, 684 (2003).

The state court judge raised an issue of the staleness of the information because O'Brien estimated that the activity on the videotape had occurred seven years earlier, and indeed that is a legitimate concern.  "The probable cause required for a search warrant 'is concerned with facts relating to a presently existing condition.'"  *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)).  "Thus, the critical question is whether the information contained in the affidavit, when presented to the . . . judge, established that there was a fair probability that [evidence] would still be found at [the location of the search]." *Spikes*, 158 F.3d at 923 (citing W. LaFave, Search and Seizure § 3.7 at 338 (3d ed.1996)).  The court of appeals has outlined several factors to consider in assessing staleness of information offered in support of a probable cause finding:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?)
> (2) the criminal (nomadic or entrenched?)

(3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?)

(4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*Abboud*, 438 F.3d at 572-73 (internal quotes omitted).

In this case, although the videotape was made seven years earlier, there is evidence in the affidavit that suggests that it was likely that some evidence of the taping activity would still be found on the premises. O'Brien told Chalut that she "recently ended her relationship with Nali," and since then Nali made threats to distribute copies of the tape. Making the tape itself suggests an intention to preserve the contraband. The location of the items was in the plaintiff's house, which suggests an "entrenched" rather than a "nomadic" individual. The complainant's sister-in-law received a copy of the tape, indicating that the plaintiff possessed the equipment to duplicate the item and recently did so. The same can be said for production of the letter and the computer equipment that generated it.

Based on the information in this record, the Court is constrained to disagree with the learned state court judge. This Court finds that Detective Chalut's affidavit contained sufficient facts to permit the state court municipal judge to find that probable cause existed that evidence of a crime (violation of Mich. Comp. Laws § 750.539d) would be found at Nali's house on the day the search warrant was issued and executed.

The Court concludes that the search about which Nali complains in his amended complaint was conducted pursuant to a valid state search warrant. Therefore, Nali has not established that "the officers['] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. "Because the plaintiff['s] Fourth Amendment rights were not violated by the entries into the plaintiff['s] . . . residence, 'there is no necessity for further inquiries concerning qualified immunity' as to the

-12-

entries." *Causey v. City of Bay City*, 442 F.3d 524, 531 (6th Cir. 2006) (quoting *Saucier*, 533 U.S. at 201). The plaintiff's section 1983 claim will be dismissed because he has not established the violation of a constitutional right.

<div align="center">B.</div>

Turning to the other objections to the magistrate judge's report, the magistrate judge noted in his recitation of the facts that, "[a]ccording to the affidavit, the witness's sister-in-law observed a person fitting Nali's physical description walking away from the witness's home, and thereafter, in checking the mailbox, the witness discovered a videotape and letter." R&R at 4. The plaintiff's first objection is that "these facts are so grossly incorrect." Obj. to R&R at 2. The plaintiff claims that the sister-in-law could not have made such a statement because she had never seen the plaintiff at the time of the alleged statement, and therefore Detective Chalut must be lying. The inclusion of deliberate falsehoods in an affidavit for a warrant can result in a loss of qualified immunity. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). However, the plaintiff misunderstands the statement in the affidavit. The affidavit does not state that the sister-in-law saw Nali; rather it says that she observed a white male fitting Nali's physical description. This could be true even if the sister never saw Nali.

The plaintiff also claims the state court judge found that Detective Chalut lied in the affidavit. However, the transcript of the state court hearing reveals that Judge Worthy never accused Detective Chalut of lying. Since the plaintiff has pointed to no evidence that the affidavit contains any false statements, this objection will be overruled.

<div align="center">-13-</div>

C.

In considering whether Detective Chalut is entitled to qualified immunity, the magistrate judge concluded "that the search warrant was facially valid, and that a reasonably well-trained officer could have concluded that the affidavit established probable cause." R&R at 8.  The plaintiff objects to this conclusion and argues that this Court is barred from making such a determination by the *Rooker-Feldman* doctrine.  However, that doctrine is not applicable here.

The *Rooker-Feldman* doctrine declares that lower federal courts do not have subject matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  Surely the plaintiff does not mean to argue that this Court does not have subject matter jurisdiction to hear the case he filed.  In any event, the plaintiff here is not "complaining of injuries caused by state-court judgments."  He is complaining of injuries allegedly caused by an illegal search of his home.  The *Rooker-Feldman* doctrine has no application here.  *See also Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) ("This argument ignores the fact that Plaintiff here does not complain of injuries caused by this state court judgment, as the plaintiffs did in *Rooker* and *Feldman.* Instead, after the state court judgment, Plaintiff filed an independent federal claim that Plaintiff was injured by Defendant when he filed a false affidavit.").  Nor is this Court bound by the state court's determination of the invalidity of the search warrant, as noted above.  This objection therefore will be overruled.

-14-

D.

The magistrate judge recognized that a police officer is protected by qualified immunity unless "a reasonably well-trained officer in [the officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). The magistrate judge concluded that Detective Chalut's belief that the affidavit established probable cause to search the plaintiff's home was reasonable. The plaintiff objects. In support of his argument, the plaintiff points to the state court judge who found no probable cause and quashed the warrant. Judge Kym Worthy stated at the suppression hearing prior to the plaintiff's state court criminal trial, "I just don't see that this affidavit alleges at all any criminal behavior." Def. City of Grosse Pointe Farms Resp. to Order to File Search Warrant Ex. 1, Tr. at 5. The plaintiff argues that the affidavit fails to even mention a crime, and it is therefore unreasonable for Detective Chalut to believe it established probable cause to search his home.

The Court has concluded, however, that the affidavit was sufficient and established probable cause to justify the issuance of the search warrant. That finding undercuts that plaintiff's objection. The plaintiff's third objection also will be overruled.

E.

The plaintiff's fourth objection is that the search warrant was not signed at the time of the search, precluding any officer from relying on the warrant in good faith. This issue was resolved when the Court ordered the defendants to produce the signed warrant or explain why they could not. Although the defendants have failed to locate the signed warrant, they have submitted affidavits by Detective Chalut and Judge Pierce swearing that the warrant was signed by Judge Pierce prior to the

-15-

search.  The defendants have shown the absence of a genuine dispute on this issue, and the plaintiff

has failed to point to evidence showing otherwise.  Since the plaintiff has produced no evidence to

the contrary, there is no genuine dispute on this fact.  *See Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1479 (6th Cir. 1989).  In addition, the plaintiff's own complaint alleges that Magistrate Judge

Pierce "issued an illegal search warrant."  Am. Compl. ¶ 5.  This is essentially an admission that the

warrant was signed by Judge Pierce.  The plaintiff's objection will be overruled.

<p style="text-align:center">F.</p>

The magistrate judge concluded that the other individual officers were also entitled to

qualified immunity because they relied on a warrant obtained by a fellow officer.  "[F]or purposes

of section 1983 immunity, an officer is entitled to assume the validity of a search warrant secured

by fellow officers."  *Davison v. Frey*, 837 F. Supp. 235, 240 (E.D. Mich. 1993) (quoting *Morris v.*

*County of Tehama*, 795 F.2d 791, 795 (9th Cir. 1986)).  The plaintiff objects, arguing that Detective

Chalut is not a "fellow officer" because he is from a different jurisdiction than the other individual

defendants.  However, it is not the fact that the warrant was secured by an officer from the same

jurisdiction that allows an officer to rely on its validity.  It is the fact that the warrant was issued by

a judge or magistrate judge that makes the officers' reliance on the warrant reasonable.  In the Sixth

Circuit, "an officer ordinarily receives qualified immunity if he or she relies on a judicially secured

warrant."  *Hale*, 396 F.3d at 724.  This follows from the Supreme Court's "preference for warrants"

and the great deference accorded to a magistrate judge's decision.  *See United States v. Leon,* 468

U.S. 897, 914 (1984).  The fact that the police officer who obtained the warrant and the other

officers assisting in its execution are from different jurisdiction is not relevant, and the plaintiff has

cited no case holding otherwise.  The plaintiff's fifth objection will be overruled.

<p style="text-align:center">-16-</p>

G.

The magistrate concluded that the plaintiff's section 1985 claim should be dismissed because the plaintiff failed to plead his claim with sufficient specificity. The plaintiff objects. The plaintiff first argues that it is unfair to dismiss his claim at this point when he has been prohibited from engaging in discovery. However, "there is no general right to discovery upon filing of the complaint. The very purpose of Fed. R. Civ. P. 12(b)(6) 'is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

The plaintiff further argues that he is only required to show an agreement between the defendants to deprive him of his constitutional rights. The plaintiff believes he has properly alleged this, and that the officers were motivated by animosity from a prior lawsuit he filed against them. The plaintiff is incorrect. To prevail on a section 1985 claim, "there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). *See also Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) ("The plaintiff further must demonstrate that the conspiracy was motivated by a class based animus, such as race."). Even if the plaintiff alleges that the officers were motivated by ill will toward him in executing the search warrant, the plaintiff's claim fares no better. The officers relied on a valid search warrant and their subjective reasons for conducting the search are irrelevant. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (testing for objective reasonableness when evaluating probable cause for an arrest, holding that officer's "subjective reason for making the

-17-

arrest need not be the criminal offense as to which the known facts provide probable cause"); *Hale*, 396 F.3d at 725 (testing for objective reasonableness when evaluating probable cause for a search).

A *pro se* litigant's complaint is to be construed liberally, *Middleton v. McGinnis*, 860 F. Supp. 391, 392 (E.D. Mich. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), that is, it is held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such complaints, however, must plead facts sufficient to show a cognizable legal wrong has been committed from which the plaintiff may be granted relief. Fed. R. Civ. P. 12(b); *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (observing that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with the relevant rules of procedural and substantive law"). "[T]his standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

The plaintiff's complaint fails to allege that the officers were motivated by racism or class-based discrimination. Instead, the plaintiff's complaint asserts that the officers were motivated by a desire for revenge "because of a prior lawsuit between plaintiff and G.P.F. and its officers." Am. Compl. at ¶ 16. Nowhere in the plaintiff's complaint is race or any other class-based animosity mentioned. Even if all allegations in this count of the plaintiff's complaint were true, the plaintiff would still not be entitled to relief. *See Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ("The court must construe the complaint in the light most favorable to the plaintiff, accept all factual

-18-

allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.").  The plaintiff's objection therefore will be overruled.

<div align="center">H.</div>

The plaintiff's final objection is to the magistrate judge's conclusion that the municipalities are not liable because the plaintiff cannot show a policy leading to the alleged constitutional violation.  The plaintiff argues that the city can be held liable for failure to properly train its officers as to what qualifies as probable cause, citing *City of Canton v. Harris*, 489 U.S. 378 (1989).

The magistrate is correct that municipalities cannot be held vicariously liable for a constitutional violation under section 1983 solely on a theory of *respondeat superior*.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978).  The plaintiff has not identified any such policy that guided the officers' actions in this case.  The plaintiff also alleged in his complaint that the cities failed to train its officers properly in their duties regarding search warrants.  As the Supreme Court recognized in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), a city can be held liable under Section 1983 for failure to train its employees.  In order to prevail on a Section 1983 "failure to train" claim, the plaintiff must show that the "training program is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is closely related to or actually caused the plaintiff's injury."  *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (internal quotes and citations omitted).  However, it is well-settled that where a municipality's liability is allegedly based on the unconstitutional actions of its employees, it is necessary to show that the employees inflicted a constitutional harm.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (observing that 'neither *Monell* . . . nor any other of our

<div align="center">-19-</div>

cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"). Because no such constitutional violation has been shown, summary judgment will be granted in favor of the municipal defendants.

## I.

The magistrate judge also recommended that the Court dismiss the plaintiff's state law claims. To be sure, the Court has supplemental jurisdiction over the those claims because they form part of the same controversy as the plaintiff's federal civil rights claims. *See* 28 U.S.C. § 1367(a). However, section 1367 also provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002); *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 280 (6th Cir. 2000) (observing that section 1367(c) "permit[s] the district court to decline to exercise supplemental jurisdiction when that court has dismissed all of the claims over which it has original jurisdiction"). As a general rule, the dismissal of claims over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Blakely*, 276 F.3d at 863.

-20-

The Court agrees with the magistrate judge and finds that it is appropriate to decline the exercise of supplemental jurisdiction over the state law claims in light of non-viability of the plaintiff's federal claims. Those claims, therefore, will be dismissed without prejudice.

IV.

The Court concludes that the plaintiff has not brought forth facts which, viewed in the light most favorable to him, establish a jury-submissible issue on his claim that his constitutional rights were violated or that the defendants conspired to deprive him of those rights within the meaning of 42 U.S.C. § 1985. Nor has the plaintiff established his claims for municipal liability. He also has failed to bring forth evidence establishing a claim that survives the individual officers' qualified immunity defense.

Accordingly, it is **ORDERED** that the report and recommendation of the magistrate judge [dkt # 72] is **ADOPTED IN PART AND REJECTED IN PART.**

It is furthered **ORDERED** that the plaintiff's objections to the magistrate judge's report and recommendation are **OVERRULED**.

It is furthered **ORDERED** that the motions to dismiss and for summary judgment by defendants Anthony Chalut, David Gardzella, Andrew Pazuchowski, Richard Rosati, and John Does; their employers, the cities of Grosse Pointe Woods and Grosse Pointe Farms [dkt #s 51, 54] are **GRANTED**.

It is furthered **ORDERED** that the plaintiff's motion to further amend his complaint [dkt # 56] is **DENIED**.

It is furthered **ORDERED** that the federal claims in the amended complaint are **DISMISSED WITH PREJUDICE** and the state claims are **DISMISSED WITHOUT PREJUDICE**.

It is furthered **ORDERED** that the plaintiff's motions to compel the defendants to produce the identity of "John Doe" [dkt # 62] and for an order to show cause and an evidentiary hearing [dkt # 80] are **DENIED** as moot.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 20, 2006

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on  July 20, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>

-22-